UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DENISE RITA ADAMS                            CIVIL ACTION

VERSUS                                                   NUMBER: 19-12282

ANDREW SAUL,                                 SECTION: "T"(5)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Disability Insurance Benefits ("DIB"). (Rec. docs. 15, 19).

Denise Rita Adams, Plaintiff herein, protectively filed the subject application for DIB on February 24, 2017, alleging disability as of December 1, 2016. (Tr. pp. 165-166). In a "Disability Report – Adult" form that appears in the administrative record below, the conditions limiting Plaintiff's ability to work were identified as chronic intractable migraines, chronic pseudotumor cerebri, osteoarthritis, a BB gun shot in the left ventricle of the brain that cannot be removed, a curved cervical spine, chronic staph infections, chronic bilateral occipital neuralgia, sleep apnea, and narcolepsy. (Tr. pp. 186-203). Plaintiff's application for DIB was denied at the initial level of the Commissioner's administrative review process on April 7, 2017. (Tr. pp. 106-109). Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on August 3, 2018 at which Plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 112-113, 62-90). On November 8, 2018, the ALJ issued a written decision in which she concluded that Plaintiff was not disabled within the

meaning of the Social Security Act. (Tr. pp. 42-60). The Appeals Council ("AC") subsequently denied Plaintiff's request for review of the ALJ's decision on June 25, 2019, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-5). It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g).

In her cross-motion for summary judgment, Plaintiff frames the issues for judicial review as follows:

> I. The ALJ failed to consider Ms. Adams['] inability to perform work on a regular and sustained basis due to frequent hospitalizations and medical treatment.
>
> II. The ALJ made significant legal errors evaluating the medical opinions of record, including ignoring the opinion of a treating physician.
>
> III. Evidence submitted to the Appeals Council merits remand for further proceedings.
>
> (Rec. doc. 15-1, p. 2).

Relevant to the issues to be decided by the Court are the following findings that were made by the ALJ:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since December 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: obesity, chronic headaches and migraines, occipital neuralgia, pseudotumor cerebri, depression, and degenerative disc disease of the cervical spine. (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity

2

of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404. 1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform [work at] a light exertion level, as defined by the Dictionary of Occupational (DOT). She will be allowed a sit and/or stand option where she can alternate positions once every 30 minutes for one to two minutes while remaining at her worksation and without increasing time off task. She will occasionally balance and stoop. She will never kneel, crouch, crawl, climb ramps and/or stairs, or climb ladders, ropes, or scaffolds. She will frequently reach except she will only occasionally reach overhead. She will avoid frequent exposure to extreme cold, heat, wetness, and humidity. She will avoid frequent exposure to vibration. She will avoid all exposure to hazards such as unprotected heights and dangerous machinery. She will avoid moderate exposure to fumes, odors, dusts, gases, poor ventilation, and pulmonary irritants. She will work in an environment with no greater than a moderate noise level. She will perform simple routine tasks and will be provided short simple instructions. She will not work in close proximity to others (i.e., separate workstation). She will have casual interaction with the general public. She will be provided a break every two hours. She will miss one day of work per month.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 22, 1968 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

> transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2016, through the date of this decision (20 CFR 404.1520(g)).
>
> Tr. pp. 47, 49, 51-52, 58, 59, 60).

Judicial review of the Commissioner's decision to deny DIB is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Once the claimant carries her initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. *Harrell*, 862 F.2d at 475. In making this determination, the Commissioner uses the five-step sequential analysis set forth in 20 C.F.R. §404.1520, as follows:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. An individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors;

4. If an individual is capable of performing the work that she has done in the past, a finding of "not disabled" must be made; and,

5. If an individual's impairment precludes her from performing her past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that she is disabled and must ultimately demonstrate that she is unable to perform the work that she has done in the past. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct.

5

2287, 2294 n. 5 (1987). If the analysis reaches the fifth step, the ALJ may establish that other work is available that the claimant can perform by relying on expert vocational testimony or other similar evidence to establish that such jobs exist. *Fraga*, 810 F.2d at 1304 (citing *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985)). Once the Commissioner demonstrates that the individual can perform other work, the burden then shifts back to the claimant to rebut that finding. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Fraga*, 810 F.2d at 1302.

In her first challenge to the Commissioner's decision, Plaintiff argues that the ALJ failed to properly consider whether she was able to sustain competitive work activity due to her frequent hospitalizations and medical treatment. Citing *Baker v. Apfel*, 159 F.3d 1140, 1146 (8th Cir. 1998) and *Kangas v. Bowen*, 823 F.2d 775 (3rd Cir. 1987), Plaintiff points to the numerous times that she has been treated and hospitalized as reflected by the voluminous administrative record below as evidence that she would be unable to maintain work on a sustained and regular basis. Plaintiff thus seeks a remand of her case for further evaluation of this issue, asserting that "[t]he ALJ simply did not consider how Ms. Adams' ability to work on a regular and sustained basis would have been affected by her need for frequent and intense treatment." (Rec. doc. 15-1, p. 5).

In *Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002), the Fifth Circuit found that the ALJ had erred by failing to make a specific finding on whether the claimant was capable not only of obtaining but also maintaining employment. However, the Fifth Circuit has clearly rejected the notion that an ALJ must in all cases make a separate finding that the claimant has the ability to maintain employment. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). The applicable Social Security regulation, 20 C.F.R. §404.1545, and Social

Security Ruling ("SSR") 96-8p both make clear that an ALJ's assessment of a claimant's residual functional capacity ("RFC") to work is a measure of the claimant's capacity to perform work "on a regular and continuous basis," and in most cases the ability to maintain employment is adequately taken into account and subsumed by the RFC determination. *Dunbar v. Barnhart*, 336 F.3d 670, 671 (5th Cir. 2003); *Frank*, 326 F.3d at 619. Any such required "extra" finding on the ability to maintain employment must be predicated on the claimant having an impairment that waxes and wanes in its manifestation of disabling symptoms. *Dunbar*, 330 F.3d at 672; *Frank*, 326 F.3d at 619. Absent evidence that a claimant's ability to maintain employment would be compromised despite her ability to perform work as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular basis is inherent in the definition of RFC, the Fifth Circuit does not require a specific finding that a claimant can maintain employment. *Dunbar*, 330 F.3d at 671.

Just as in *Frank*, Plaintiff does not allege that she can work for short periods of time but cannot hold a job; rather, she appears to contend that she cannot work at all. *Frank*, 326 F.3d at 621. "Consequently, the ALJ was not required to make a separate finding regarding [P]laintiff's ability to maintain employment." *Hernandez v. Astrue*, No. 06-CV-1143, 2007 WL 9752125 at *13-14 (E.D. La. Jun. 18, 2007), *adopted*, 2007 WL 9752728 (E.D. La. Aug. 22, 2007), *aff'd*, 269 Fed.Appx. 511 (5th Cir. 2008). *See also Kelly v. Astrue*, No. 10-CV-1198, 2011 WL 3563197 at *11 (E.D. La. Jun. 27, 2011), *adopted*, 2011 WL 3565481 (E.D. La. Aug. 12, 2011); *Copenhaver v. Astrue*, No. 09-CV-0838, 2011 WL 891617 at *12-14 (W.D. Tex. Mar. 11, 2011). Nor does a review of the ALJ's opinion reveal a misapprehension on her part that the ability to perform work on a regular and continuing basis is inherent in

7

the definition of RFC.  To the contrary, the ALJ quite clearly stated in her decision that "[a]n individual's residual functional capacity is her ability to do physical and mental work activities <u>on a sustained basis</u> despite limitations from her impairments," specifically citing §404.1545 and SSR 96-8p.  (Tr. at p. 46)(emphasis added).  Here, Plaintiff has not established the factual predicate required by Fifth Circuit precedent to necessitate a separate, "extra" finding regarding her ability to maintain employment.  *Copenhaver*, 2011 WL 891617 at *12-14; *Hernandez*, 2007 WL 9752125 at *13-14.

The foregoing notwithstanding, and contrary to Plaintiff's present contention, a review of the ALJ's decision reveals that she did, in fact, make a separate, specific finding regarding Plaintiff's ability to maintain employment, clearly stating that "… the record as a whole does not support a finding that the claimant is unable to sustain work on a regular and continuing basis due to her conditions," further opining that "… the record contains inconsistencies between the degree of severity the claimant alleges and the objective medical evidence in the claimant's treatment notes."  (Tr. p. 56).  This finding appears following a discussion of the evidence of record bearing on Plaintiff's conditions that were severe as opposed to non-severe, an explanation of why the ALJ concluded that Plaintiff's severe impairments were not of Listing-level severity, and an assessment of Plaintiff's RFC for work, during which the ALJ made clear that she did not entirely credit the Plaintiff's "… statements concerning the intensity, persistence and limiting effects …" of her symptoms. (Tr. pp. 47-56).  *See*, e.g., *Langway v. Berryhill*, No. 18-CV-0549, 2019 WL 918958 at *9-10 (M.D. Fla. Feb. 8, 2019), *adopted*, 2019 WL 913283 (M.D. Fla. Feb. 25, 2019); *Whitlow v. Astrue*, No. 08-CV-0159, 2010 WL 1995608 at *5-7 (M.D. Ala. May 17, 2010)(citing *Wilson v. Barnhart*, 210 Fed.Appx. 448 (5th Cir. 2006)(stating that ALJ need not make separate

8

finding on absenteeism issue where he was aware of relevant VE testimony, discounted plaintiff's subjective complaints, and found that she was capable of working). The ALJ in the present case specifically questioned the VE on the amount of absenteeism a typical employer would consider tolerable, *Wilson v. Barnhart*, 201 Fed.Appx. 448, 451 (5th Cir. 2006), and she included in her RFC assessment an allowance for the absenteeism she found was objectively supported. (Tr. pp. 85-88, 52-58). A catalogue of Plaintiff's treatment visits, in and of itself, does not demonstrate that each doctor's visit would result in her missing an entire day of work. *Miller v. Berryhill*, No. 16-CV-1292, 2017 WL 3642035 at *7 (E.D. Mo. Aug. 24, 2017); *see also Greenwade v. Saul*, No. 18-CV-0119, 2020 WL 1318793 at *7-8 (N.D. Ia. Mar. 20, 2020). This challenge is without merit.

In her second challenge to the Commissioner's decision, Plaintiff argues that the ALJ made significant legal errors in evaluating certain medical evidence of record which will be discussed more fully below. Before proceeding to those particulars, the Court will recall the applicable legal standards governing the consideration of medical evidence in general.

The law is clear that the ALJ has the sole responsibility for determining a claimant's disability status and is free to reject the opinion of <u>any</u> physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994), *overruled in part on other grounds by Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080 (2000)). A treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown. *Newton*, 209 F.3d at 456 (citing *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999) and *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984 (1995)). Good cause exists when the treating physician's opinions are so brief and

9

conclusory that they lack persuasive weight, when they are not supported by medically acceptable techniques, or when the evidence supports a different conclusion. *Newton*, 209 F.3d at 456; *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  The Regulations require an ALJ to perform a detailed analysis of a treating doctor's views under the criteria set forth in 20 C.F.R. §404.1527(c)(formerly §404.1527(d)) <u>only</u> in the absence of controverting medical evidence from other treating and/or examining physicians. *Newton*, 209 F.3d at 453.  In the final analysis, the responsibility of weighing the evidence and determining the credibility of witnesses' testimony and doctors' opinions lies with the ALJ.  *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991); *Greigo v. Sullivan*, 940 F.2d, 942, 945 (5th Cir. 1991); *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

   Citing page 1971 of the administrative record below, Plaintiff first complains that the ALJ "ignored" the opinion of Dr. Khan, her treating primary care physician, that she was "highly disabled."  A close inspection of the cited page, however, reveals that is not an opinion from Dr. Khan at all but is instead part of an assessment that was made by another one of Plaintiff's treating physicians, Dr. Maria Carmen Wilson, on June 2, 2017 (tr. p. 1714) which, in turn, was embedded in a progress note from Susan Holden, RN, following her report of a phone conversation with Plaintiff in which Plaintiff explained that she was dutifully following Dr. Wilson's advices and would not be attending an appointment with Dr. Khan.  (Tr. pp. 1970-1971).  Regardless of whether the characterization of Plaintiff is attributed to Dr. Khan or Dr. Wilson, statements from a treating physician that a claimant is "disabled" or "unable to work" are not to be given any special significance as those are the

ultimate issues reserved to the Commissioner. 20 C.F.R. §404.1527(d)(1); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *Neely v. Barnhart*, 512 F.Supp. 2d 992, 997 (S.D. Tex. 2007). To the extent that Dr. Wilson's assessment or RN Holden's recitation of it was not mentioned by the ALJ, the Fifth Circuit has rejected the "rigid approach" of requiring an ALJ to specifically articulate the evidence that supported her decision and to discuss the evidence that was rejected. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Next, Plaintiff takes exception with the weight that the ALJ gave to the opinions of the state-agency medical consultants, Drs. Sheryl Smith and Lawrence Guidry, who reviewed the medical evidence that was then extant at the initial level of the Commissioner's administrative review process, suggesting that the opinions were "outdated" as being given before the bulk of the documentary evidence had been assembled. As was noted by the ALJ, state-agency medical consultants are highly qualified physicians with considerable expertise in the Social Security disability process whose opinions must be duly considered. (Tr. pp. 55-56). 20 C.F.R. §404.1513a(b)(1). The review process that the consultants engage in and the opinions that result therefrom are done at the initial or reconsideration levels of the administrative review process, as was done in Plaintiff's case. 20 C.F.R. §404.1513a(a). Here, the ALJ acknowledged that while the doctors had not had an opportunity to examine or treat Plaintiff, their opinions were bound to be considered and were given the weight that they were because they were "… consistent with the longitudinal review of the evidence of record." (Tr. pp. 55-56). The consultants' opinions were but a small part of the wealth of evidence that the ALJ properly considered. (Tr. pp. 48-58).

11

Plaintiff additionally claims that the ALJ erred by providing "... only specious and unsupported reasons for rejecting the opinion[s] of Dr. Bailey," another one of her treating physicians, as set forth in a "Headaches Medical Source Statement" form that the doctor completed on July 12, 2018. (Rec. doc. 15-1, pp. 7-9). This allegation will be discussed more fully below in connection with Plaintiff's third challenge to the Commissioner's decision regarding the level of review accorded to identical forms that were completed by two of Plaintiff's other treating physicians. Suffice it to say here that the ALJ did not "reject" Dr. Bailey's opinions outright but assigned them little weight based on inconsistencies that the ALJ noted between what was recorded on the one-page form versus the objective evidence of record.

Plaintiff also assails the ALJ's reliance on the findings of various practitioners who described her as being "in no distress" when discounting the opinion of Dr. Bailey that Plaintiff's headaches were severe enough to preclude all work activity. Plaintiff argues that many of these findings are of little value in assessing Dr. Bailey's opinions because they were made by doctors who were treating Plaintiff for conditions other than her headaches and to whom it could not reasonably be expected that Plaintiff would "report" headache-related symptoms. On each occasion, however, the finding appears in the treating physicians' objective observations made upon physical examination rather than in the doctors' recordations of Plaintiff's subjective complaints (Tr. pp. 1481, 1625, 1646, 2312, 2334, 2360, 2399).[1] Plaintiff further demeans the ALJ's first citation to such instances, made on May 3, 2017, as unworthy of credence because Plaintiff was reportedly hospitalized later that same day due to intractable migraines. The hospitalization to which

---

[1] Admittedly, the ALJ's cite to page 2363 of the administrative record was erroneous as it contains neither subjective complaints nor objective findings.

12

Plaintiff refers, however, occurred on May 24, 2017 and physicians' objective findings and observations made during the course of that admission are certainly relevant to the condition that precipitated the hospital stay. (Tr. pp. 1625, 1646). An ALJ is free to assign little or no weight to any physician's opinions if they are unsupported by the evidence. *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005). In carrying out her regulatory responsibility to assess Plaintiff's RFC to work, 20 C.F.R. §§404.1527(d)(2) and 404.1546(c), the ALJ was entitled to rely on the objective evidence that she found to be more credible. *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988). With respect to Dr. Bailey's opinions regarding alleged deficits in attention, concentration, and pace, any such limitations, to the extent that they have adequate support in the record, were adequately taken into account by the ALJ in limiting Plaintiff to simple, routine tasks with short, simple instructions, work that was not done in close proximity to others, and work involving only casual interaction with the public. *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988). That the ALJ may not have cited to each and every piece of medical evidence that she considered does not establish an actual failure to consider all of the evidence, *Castillo v. Barnhart*, 151 Fed.Appx. 334, 335 (5th Cir. 2005), particularly where she repeatedly indicated that she had considered all of the evidence of record. (Tr. pp. 45, 47, 51). *Brunson v. Astrue*, 387 Fed.Appx. 459, 461 (5th Cir. 2010). This challenge is without merit.

Plaintiff's third and final challenge to the Commissioner's decision is that evidence she presented for the first time to the AC, which "… found only that there was no reasonable probability that th[e] evidence would have changed the ALJ's decision," warrants a remand of her case for further consideration. (Rec. doc. 15-1, pp. 9-10). The evidence cited by Plaintiff consists of two one-page questionnaire-type forms denominated

13

"Headaches Medical Source Statement" that had been provided to and were completed by Doctors Khan and Wilson, as well as a three-page paragraph "To Whom It May Concern" letter from Dr. Khan dated December 11, 2018 in which he expressed disagreement with the ALJ's decision. (Tr. pp. 6, 7, 24). These three pieces of evidence, Plaintiff maintains, lend support to the "Headache Medical Source Statement" form that was completed by Dr. Bailey, which was timely submitted to and considered by the ALJ but was reportedly "rejected" by her.

As observed by the Fifth Circuit, "[w]hen confronted with new and material evidence, the Appeals Council 'shall evaluate the entire record including the new and material evidence … It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.' 20 C.F.R. §404.970(b)." *Whitehead v. Colvin*, 820 F.3d 776, 780 (5th Cir. 2016). "However, the regulations do not require the Appeals Council to discuss the newly submitted evidence, nor is the Appeals Council required to give reasons for denying review." *Id.* (citing *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015). In this case, the AC clearly stated that it had considered the evidence cited by Plaintiff but found that it did not provide a basis for changing the ALJ's decision and thus denied Plaintiff's request for review. (Tr. pp. 1-2). That satisfies its obligations under *Whitehead* and the Regulations.

In terms of subsequent court review, "[i]f additional evidence is presented while the case is pending review by the Appeals Council, courts [] customarily review the record as a whole, including the new evidence, in order to determine whether the Commissioner's findings are still supported by substantial evidence." *Higginbotham v. Barnhart*, 163 Fed.Appx. 279, 281 (5th Cir. 2006). The standards governing the consideration of

14

additional evidence by the AC and a district court are similar, in that they both require that the evidence be new as well as material. *Thomas v. Colvin*, 587 Fed.Appx. 162, 165 (5th Cir. 2014)(citing 20 C.F.R. §404.976(b)(1) and *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987)). Material evidence is that which creates "… a reasonable possibility that it would have changed the outcome of the [Commissioner's] decision." *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987).

Measured against the foregoing standards, the evidence relied upon by Plaintiff does not warrant a remand for several reasons. First, the evidence was technically not "new" *vis-á-vis* the AC because it was actually reviewed by that tribunal, which found that the evidence provided no basis for granting Plaintiff's request for review of the ALJ's decision. Second, as noted above, the evidence cited by Plaintiff consists of two identical questionnaire-type forms as well as a "To Whom It May Concern" letter authored by one of Plaintiff's treating physicians. The opinions of physicians, typically treating physicians, that are captured on "To Whom It May Concern" letters or similar checklist type forms, particularly when unaccompanied by any contemporaneously-recorded, medically acceptable findings, are entitled to little weight on that basis alone. *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980). The use of these checklist forms is generally viewed with disfavor when the forms are not adequately supported by any narrative citations to clinical findings. *Rodrigue v. Colvin*, No. 13-CV-1814, 2014 WL 2993423 at *15 (E.D. La. July 2, 2014)(Berrigan, J.); *Brown v. Astrue*, No. 11-CV-2919, 2013 WL 620269 at *6 (E.D. La. Jan. 18, 2013), *adopted*, 2013 WL 619177 (E.D. La. Feb. 19, 2013)(Lemmon, J.); *Haynes v. Astrue*, No. 11-CV-2289, 2012 WL 3860467 at *15-16 (E.D. La. July 23, 2012); *adopted*, 2012 WL 3863171 (E.D. La. Sept. 5, 2012)(Feldman, J.), *aff'd*, 519 Fed.Appx. 258 (5th Cir. 2013)(and

cases cited therein); *Morris v. Astrue*, No. 08-CV-4105, 2010 WL 497748 at *10 (E.D. La. Feb. 1, 2010)(Lemmon, J.). Detracting further from the evidentiary value of the opinions set forth on such checklist forms are those that are generated, not in the ordinary course of business, but in anticipation of and more proximate in time to Social Security administrative proceedings. *Haynes*, 2012 WL 3860467 at *15-16. *See also Harrell*, 862 F.2d at 482 ("pain diary" which began shortly after application was filed and ended just before ALJ hearing entitled to diminished weight).

The two "Headaches Medical Source Statements" forms cited by Plaintiff were respectively completed by Doctors Khan and Wilson on August 15 and 6, 2018, shortly after the administrative hearing held in this matter on August 3, 2018. Yet the forms were not provided to the ALJ for her consideration prior to the issuance of her written decision on November 14, 2018. Neither of the forms contain any contemporaneously-recorded, medically acceptable findings and are thus entitled to little weight on that basis alone. *Warncke*, 619 F.2d at 417. The form that was completed by Dr. Wilson identifies only two contacts that the doctor has had with Plaintiff: one in June of 2017 and the second on August 6, 2018, the day the form was completed. Treatment notes from the latter encounter were not made part of the administrative record below. Treatment notes from the former encounter are part of the administrative record and were summarized by the ALJ in the following fashion:

> On June 2, 2017, the claimant presented to the office of Maria Carmen Wilson, M.D., for intractable daily headaches. The claimant stated that her headaches began after she was shot in the head with a BB gun and the BB remained lodged in her head. She had undergone multiple preventatives and interventions with mixed results. She was treated with Diamox for pseudotumor cerebri, although opening intracranial pressure was borderline elevated at 25 cm/H2O.

16

> A dilated fundoscopy examination did not reveal papilledema. The claimant was well groomed and alert. (Ex. 6F/27). The neurological examination was normal and her motor function was within normal limits. She had undergone multiple computed tomography scans and angiograms that were all negative for any significant abnormality with the exception of a foreign metallic object seen near the pineal gland. She was advised to take Topomax at bedtime, and to limit opioid use to no more than ten doses per month. She was also advised to combine Tigan with Zofran to optimize treatment for nausea and was prescribed Namenda. (Ex. 6F/34).

(Tr. pp. 54-55).[2]

As for Dr. Khan's "To Whom It May Concern" letter of December 11, 2018, the fact that he disagreed with the ALJ's decision only goes to underscore the often difficult task faced by the ALJ in weighing the evidence and determining the credibility of doctors' opinions, as well as witnesses' testimony. *Carrier*, 944 F.2d at 247; *Griego*, 940 F.2d at 945; *Wren*, 925 F.2d at 129; *Moore*, 919 F.2d at 905.

Plaintiff argues that the foregoing three pieces of evidence buttressed the opinions of Dr. Bailey set forth on the "Headaches Medical Source Statement" form that he completed on July 12, 2018. (Tr. p. 2657). In her written decision, the ALJ devoted considerable time in weighing Dr. Bailey's opinions as captured on the form against the objective findings reported elsewhere in the record, as follows:

> Colin Bailey, M.D., completed a medical source statement dated July 12, 2018. Dr. Bailey stated he had treated the claimant for thirty years, however, he noted that she was followed by a neurologist for her headaches. He stated that the claimant experienced migraine headaches with an intensity that prevented all activity. He further stated that when the claimant had headaches she would be precluded from performing even basic work activities and would need breaks

---

[2] As the ALJ observed, Plaintiff advised Dr. Wilson that her headaches had begun in 1982 after she was accidentally shot with a BB gun. Yet she was able to work over the years in spite of her headaches. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995)(citing *Fraga*, 810 F.2d at 1305 n. 11).

17

from the workplace. He further noted that the claimant's headaches affected her attention, concentration, and pace to such a degree she would be unable to perform unskilled tasks for up to two hours at a time. (Ex. 12F). Generally, more weight is afforded to the opinion of a treating source as the treating source is most often in the best position to provide a detailed, longitudinal picture of the claimant's medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings or one-time examinations. (20 CFR 404.1527, 20 CFR 416.927). In the instant case, the limitations assessed to the claimant do not comport with the clinical findings or diagnostic evidence contained in the record. Although Dr. Bailey has opined that the claimant would be precluded from performing even basic work activities or attending and concentrating sufficiently to perform even unskilled work, her mental status and neurological examinations generally noted that the claimant's memory and concentration was intact. (Exs. 3F/38, 52, 57, 61, 380; 5F/17, 299, 321, 329, 336). Likewise, her treating notes consistently noted that while she alleged significantly complaints of pain at a level of nine or ten out of ten on a pain scale with zero representing no pain and ten representing unbearable pain, she was consistently observed to be in no distress. (Exs. 5F/155, 299, 320; 8F/54, 76, 102, 105, 141). Accordingly, the undersigned does not find that the limitations assessed in the medial source statement are supported by the evidence or consistent with the clinical findings of the claimant's other treating providers, and therefore <u>little</u> <u>weight</u> is afforded to the opinion of Dr. Bailey.

(Tr. p. 56)(emphasis added).

Contrary to Plaintiff's current contention, the ALJ did not "reject" Dr. Bailey's July 12, 2018 opinions outright. Rather, just like the findings and opinions of the various treating and non-treating physicians who were involved in this case, the ALJ simply weighed Dr. Bailey's opinions and accorded them the quantum of weight to which the opinions had objective support. That was within the ALJ's province in the first instance. *Qualls v. Astrue*, 339 Fed.Appx. 461, 466-67 (5th Cir. 2009). There is no reasonable possibility that the ALJ's decision would have been different had she had the benefit of the documentary evidence

18

that Plaintiff submitted for the first time to the AC. Review of Social Security determinations is highly deferential, *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and Plaintiff has not rebutted the Commissioner's finding that she can perform other work. *Mays*, 837 F.2d at 1364; *Fraga*, 810 F.2d at 1302.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that Plaintiff's suit be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[3]

New Orleans, Louisiana, this  1st   day of     September    , 2020.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[3] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.